9 F.3d 855
 22 UCC Rep.Serv.2d 155
 ARKLA ENERGY RESOURCES, A DIVISION OF ARKLA, INC., successor
to Arkansas Louisiana Gas Company, Appellant and
Cross-Appellee,
v.
ROYE REALTY AND DEVELOPING, INC., an Oklahoma corporation,
Appellee and Cross-Appellant.
 Nos. 91-7131, 7132.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 3, 1993.
 
 Richard T. McGonigle (Michael E. Riddick, Blanchard, Walker, O'Quin & Roberts, Shreveport, LA, and Mark S. Thetford, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Tulsa, OK, with him on the briefs), Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for appellant and cross-appellee.
 Eric S. Gray (Thomas P. Goresen and Gregory F. Pilcher, Gray, Goresen, Moriarty & Wright, Oklahoma City, OK, with him on the briefs), Gray, Goresen, Moriarty & Wright, Oklahoma City, OK, for appellee and cross-appellant.
 Before LOGAN, MOORE, and ANDERSON, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 In this diversity action, Arkla Energy Resources ("AER"), a division of Arkla, Inc., appeals the portion of the district court's judgment adverse to it and the district court's denial of its motion for a new trial on its breach of contract claim. Roye Realty and Developing Corporation ("Roye") cross-appeals the district court's adverse judgment on its counterclaim for breach of contract and the court's denial of its request for attorney fees.
 
 
 2
 AER is a Delaware corporation with its principal place of business in Louisiana. Roye is an Oklahoma corporation with its principal place of business in Oklahoma. AER owns and operates natural gas pipelines; Roye produces and provides natural gas from various natural gas fields for delivery to pipelines.
 
 
 3
 In June, 1986, AER sued Roye in Haskell County, Oklahoma, on various grounds. The parties eventually signed a settlement agreement on February 6, 1989. The agreement required AER to pay Roye $2,935,000 for the right to purchase gas and $.96 per Mcf (thousand cubic feet) for 1.05 Bcf (billion cubic feet) of gas that AER could request during the contract period. In turn, Roye would deliver gas to AER when AER requested it, up to 3,000 Mcf a day and up to the 1.05 Bcf total over a period of two years. At the end of the contract period AER had to pay for the entire 1.05 Bcf regardless of how much gas it had requested. The agreement also prohibited disclosure of its terms.
 
 
 4
 The agreement's two-year term began in February, 1989, but AER did not request any gas through September, 1989. Effective October 1, 1989, AER assigned its rights under the agreement to Blue Jay Gas Company ("Blue Jay"), a wholly-owned subsidiary of Arkla, Inc. Blue Jay requested daily deliveries of gas from Roye for the month of October. In response, Roye suspended performance of the agreement on September 29, 1989, and demanded adequate assurances of performance from AER and Blue Jay. On October 10, Blue Jay notified Roye that the assignment was terminated effective November 1, 1989, and on October 26, AER sent letters assuring Roye that both AER and Blue Jay would perform. Roye never delivered any gas to Blue Jay.
 
 
 5
 AER itself first requested gas on December 15, 1989, when it sent Roye a letter requesting 3,000 Mcf a day during January, 1990. AER sent a similar letter on January 19, 1990, requesting 3,000 Mcf a day for February, 1990. Although the gas purchase contracts covered by the settlement agreement required Roye to deliver gas against a prevailing pipeline pressure up to 500-800 psi, Roye was unable to deliver against AER's prevailing pressure of 450 psi. Consequently, Roye delivered no gas in January, and in February delivered approximately twenty-seven percent of the gas AER nominated for February.
 
 
 6
 Roye then offered to deliver to AER, effective March 1, 1990, daily allotments of gas up to five times as high as those it was obligated to deliver, in order to deliver the entire 1.05 Bcf of gas available to AER under the agreement. AER rejected this offer. During the remainder of the two-year term, AER requested nearly all the rest of the 1.05 Bcf of gas to which it was entitled, but did not request again the amounts that Roye had not delivered in October, 1989, and January and February, 1990. At the end of the two years, AER had received 848,590 Mcf of gas, approximately eighty-one percent of the total gas AER and Blue Jay had nominated.
 
 
 7
 AER brought this action against Roye in March, 1990, in the Eastern District of Oklahoma. AER alleged that Roye had breached the settlement agreement by not delivering the nominations for October, 1989, and January and February, 1990. AER requested damages equal to the contract price of the undelivered gas. Roye counterclaimed, alleging that AER had breached the agreement's confidentiality provision when it assigned its rights to Blue Jay and requesting $100,000 in liquidated damages as provided by the contract.
 
 
 8
 The district court held that Roye had breached the agreement by failing to deliver gas in January and February, but that Roye had offered to effectively cure its breach and AER wrongfully rejected that offer. AER was thus entitled to no damages for Roye's breach. The court also held that Roye justifiably suspended performance and demanded adequate assurances from AER and Blue Jay in October, 1989. As to Roye's counterclaim, the court ruled that AER did not breach the confidentiality provision of the agreement.
 
 
 9
 The district court subsequently denied AER's motion for a new trial or to alter or amend the judgment. The district court also denied Roye's post-judgment motion for attorney fees under Oklahoma law and the Federal Rules of Civil Procedure.
 
 
 10
 AER now appeals the district court's judgment and its denial of AER's post-judgment motion for a new trial or to alter or amend the judgment. It argues that the district court clearly erred by not awarding it damages for Roye's breach of the settlement agreement, and by finding that Roye was entitled to suspend performance pending adequate assurances in October, 1989. On cross-appeal, Roye contends that the district court clearly erred in finding that AER did not breach the confidentiality provision, and abused its discretion in refusing to award Roye attorney fees. Although we follow different reasoning on some of the issues, we affirm.
 
 I. AER's Appeal
 
 11
 A. Roye's Failure to Deliver in January and February
 
 
 12
 The district court held that Roye had breached the agreement by failing to deliver the requested gas in January and February, 1990. The court also held, however, that Roye's offer in late February to deliver up to 15,000 Mcf a day was an effective cure, and thus AER was not entitled to damages. We affirm on different grounds. We conclude that AER may not recover the value of the undelivered gas not because Roye effectively cured its breach, but because its breach was only a non-conformity that did not substantially impair the value of the requested gas. AER was therefore obligated to accept Roye's late and perhaps larger than expected installments. We also conclude that AER has not shown it would have been damaged by the delayed delivery of these installments.
 
 
 13
 i. Installment Contract
 
 
 14
 An installment contract "requires or authorizes the delivery of goods in separate lots to be separately accepted." Okla.Stat.Ann. tit. 12A, Sec. 2-612(1) (1963). The district court concluded that the agreement was an installment contract because it "provide[d] of [sic] the delivery of gas in installments over a two-year period." Arkla Energy Resources v. Roye Realty & Developing, Inc., No. CIV-90-110-C, slip op. at 9, 1991 WL 538815 (E.D.Okla. Sept. 30, 1991). Whether the agreement is an installment contract is primarily a question of fact. See Stinnes Interoil, Inc. v. Apex Oil Co., 604 F.Supp. 978, 981 (S.D.N.Y.1985) (noting that whether a contract is an installment contract under section 2-612 is a question of fact). We therefore must accept the district court's finding unless it is clearly erroneous. Fed.R.Civ.P. 52(a).
 
 
 15
 The settlement agreement provided that AER would pay $2,935,000 in several installments for "the right to purchase" 1.05 Bcf of gas. Over a two-year period beginning February 1, 1989, AER could request up to 3,000 Mcf of gas a day. Roye was obligated to maintain "daily deliverability" above 3,000 Mcf a day and to deliver any volumes requested up to that level. AER in turn would pay Roye $.96 per Mcf out of an escrow account containing $1,008,000, the amount required to pay $.96 per Mcf for the maximum 1.05 Bcf that AER could buy. However, at the end of the two-year period the entire amount in escrow was to go to Roye, even if AER didn't request or, if tendered by Roye, take the entire 1.05 Bcf.
 
 
 16
 AER argues that the agreement was not an installment contract because (1) it did not authorize delivery in lots because it did not authorize any deliveries unless AER requested them, and (2) the delivery of the gas in separate daily amounts actually indicates a series of separate contracts. We disagree with both arguments.
 
 
 17
 First, the uncertainty of when and if AER would request delivery of gas does not change the essential character of the contract. The contract "authorized" delivery in separate daily lots at AER's request. An installment contract need not authorize deliveries at times chosen by the seller or specified in the contract; it may instead authorize deliveries at times chosen by the buyer. See Bevel-Fold, Inc. v. Bose Corp., 9 Mass.App. 576, 402 N.E.2d 1104, 1106 (1980) (holding that contract providing for delivery according to buyer's schedule, instructing seller not to anticipate that schedule, and giving buyer acceptance rights as to each delivery, was installment contract under section 2-612). Furthermore, the agreement is still an installment contract despite the unrealized possibility that AER might never have authorized any deliveries. See Task Force of the A.B.A. Subcomm. on General Provisions, Sales, Bulk Transfers, & Documents of Title, Comm. on the Uniform Commercial Code, An Appraisal of the March 1, 1990, Preliminary Report of the Uniform Commercial Code Article 2 Study Group, 16 Del.J.Corp.L. 981, 1173 (1991) ("Transactions such as 'take or pay' contracts are installment contracts under Sec. 2-612(1) because the bargain 'authorizes' delivery of goods in separate lots even though the buyer may decide always to pay and never to take.").
 
 
 18
 Second, the separate deliveries to AER do not suggest separate contracts. Even contracts that say each delivery is a separate contract will be treated as installment contracts where there is a single contract and negotiation. Okla.Stat.Ann. tit. 12A, Sec. 2-612(1) & U.C.C. cmt. 3; Sencon Sys., Inc. v. W.R. Bonsal Co., No. 85-C-8250, 1986 WL 10989, at * 2 (N.D.Ill. Sept. 29, 1986) (explaining that separate deliveries are not separate contracts where a single contract forms the basis for all the individual transactions). The parties signed a single contract that governed all the deliveries to AER. AER's requests under the contract were not separate offers to buy which Roye could reject; the contract obligated Roye to deliver and AER to pay on fixed terms. It even fixed the total amount that AER was to pay regardless of the amount of gas requested. The deliveries therefore were not a series of separate contracts.
 
 
 19
 We therefore conclude that the district court did not clearly err in finding that the settlement agreement was an installment contract under section 2-612.
 
 
 20
 ii. AER's Right to Reject
 
 
 21
 The district court held that Roye's failure to deliver 3,000 Mcf a day when requested in January and most of February breached the settlement agreement. The agreement required Roye to maintain daily deliverability of at least 3,000 Mcf a day and actually deliver amounts requested up to 3,000 Mcf a day. We therefore agree that Roye's failure to deliver the January and February nominations when requested breached the contract.
 
 
 22
 The district court also held that Roye's offer in late February to deliver up to 15,000 Mcf a day in subsequent months was an effective cure of Roye's breach. However, Roye's offer could not be an offer to cure because Roye had not previously tendered anything and AER had not rejected anything, both apparent prerequisites for cure under section 2-508. Although this case is not typical, we think Roye's offer was instead a tender of non-conforming installments. Because the non-conformity did not substantially impair their value, however, section 2-612 obligated AER to accept the installments despite the non-conformity.
 
 
 23
 In the typical situation covered by section 2-612, the seller ships the goods to the buyer, who then discovers their non-conformity and must decide whether it may reject them under section 2-612. In this case, however, the seller told the buyer beforehand that it was prepared to deliver non-conforming goods if the buyer was willing to accept them. As long as the seller's offer is a legitimate tender of installments, we think section 2-612 still applies. In this case Roye could not physically deliver gas without AER's cooperation anyway. But Roye's letter was a valid tender of installments because it expressed its willingness and intent to deliver the gas under the terms of the letter, and Roye was then able to perform as offered. See Okla.Stat.Ann. tit. 12A, Sec. 2-503 (describing seller's tender of delivery); Bembridge v. Miller, 235 Or. 396, 385 P.2d 172, 175 (1963).
 
 
 24
 AER could refuse Roye's tender of non-conforming installments only if "the non-conformity substantially impairs the value of that installment and cannot be cured." Okla.Stat.Ann. tit. 12A, Sec. 2-612(2). Regardless of whether the non-conformity could be and was cured, AER was obligated to accept the late installments from Roye if the delay did not substantially impair the value of those installments. AER therefore could not refuse substantially unimpaired installments and then recover their value because it didn't receive them.
 
 
 25
 The district court found that time was not of the essence and that there were no damages or substantial impairment. Arkla Energy Resources, No. CIV-90-110-C, slip op. at 9-10, 12-14. We must accept the district court's finding that there was no substantial impairment unless clearly erroneous. Bill's Coal Co. v. Board of Pub. Utils., 887 F.2d 242, 248 (10th Cir.1989); see also Hays Merchandise, Inc. v. Dewey, 78 Wash.2d 343, 474 P.2d 270, 273 (1970) (inferring a finding of no substantial impairment from trial court's finding of no material breach).
 
 
 26
 In order to prove substantial impairment, AER "must present objective evidence that with respect to its own needs, the value of the goods was substantially impaired." Bodine Sewer, Inc. v. Eastern Illinois Precast, Inc., 143 Ill.App.3d 920, 97 Ill.Dec. 898, 493 N.E.2d 705, 713 (1986). "Substantial impairment of the value of an installment can turn not only on the quality of the goods but also on such factors as time, quantity, assortment, and the like." Okla.Stat.Ann. tit. 12A, Sec. 2-612 U.C.C. cmt. 4. The district court apparently concluded that AER had not shown that the delay would reduce the value of the gas at all, let alone substantially. AER argues that the district court clearly erred because the higher price of the settlement gas would adversely affect its weighted average cost of gas ("WACOG") if it were forced to take the late installments after January and February. Appellant's Br. at 34. The court found that the gas cost only $.96 per Mcf rather than $3.75 per Mcf as AER contends, in which case the settlement gas would not increase AER's WACOG. Arkla Energy Resources, No. CIV-90-110-C, slip op. at 13-14. Because the contract says the initial payment of $2,935,000 was for the right to purchase gas, the district court did not clearly err by treating that amount as a kind of option payment rather than part of the gas price.
 
 
 27
 Even if the gas were more expensive, however, the value of the January and February shipments was not substantially impaired because of the delay. Since AER had to pay the full cost of the 1.05 Bcf regardless of how much or when it requested gas, AER's costs would be the same no matter what month it received the gas. The late delivery of more expensive gas therefore could only impair its value to AER if it could not sell the gas or could not sell it for the same price. Although AER argues that everyone in the industry knows that demand for gas decreases after the winter months, it offered no evidence at trial that there was no demand for the late gas after February, or that consumers would not have paid a higher price reflecting AER's WACOG. It did offer testimony that it could not take gas in the summer or "shoulder" months because of low demand. Appellant's App. at 196. Despite this testimony, AER requested over 2,000 Mcf a day throughout the summer months of 1990. Arkla Energy Resources, No. CIV-90-110-C, slip op. at 7. Without more specific evidence that AER could not have sold additional settlement gas after March, we cannot say the district court clearly erred in finding that the value of the installments was not substantially impaired because of lost revenues.
 
 
 28
 AER also argues that the delay was harmful because AER was physically unable to receive the gas. However, the district court found insufficient evidence to prove that AER could not receive the gas in later months. Id. at 12. After reviewing the record, we do not think this finding is clearly erroneous.
 
 
 29
 Finally, AER suggests that the delay impaired the value of the installments simply because AER thereby lost its contractual right to specify delivery dates. The loss of the contractual right to specify the time of delivery might be substantial impairment if time were of the essence of the contract. Otherwise, AER's argument only restates the fact that the delay breached the contract, without demonstrating any way in which the loss of that right damaged AER or reduced the value of the gas. But if the parties had agreed that the time of delivery was essential to the contract's value, a delay such as Roye's might be considered to substantially impair the value of an installment regardless of whether AER proved any impairment. See Stinnes Interoil, 604 F.Supp. at 981 n. 4 (suggesting that whether time is of the essence of the contract may indicate whether the value of installments was substantially impaired).
 
 
 30
 The district court held that time was not of the essence of the settlement agreement. Because this finding relied on extrinsic evidence as well as the terms of the contract, we must accept this finding unless it is clearly erroneous. Chaparral Resources, Inc. v. Monsanto Co., 849 F.2d 1286, 1289 (10th Cir.1988).
 
 
 31
 AER argues that the district court clearly erred because AER's right to request gas to be delivered on specific dates means "that a specific delivery date was set, making time of the essence." Appellant's Br. at 26-27. However, a specific date for performance does not necessarily mean that performance by that date is of the essence of the contract. See Kaiser v. Crouch, 504 P.2d 429 (Okla.1972) (holding that time was not of the essence even though contract set a specific date by which buyer must build on land). AER's argument only proves that Roye did breach the contract by failing to deliver gas on the dates requested. Whether that date was of the essence of the contract, and thus whether failure to deliver by that date would substantially impair the value of the delivery, is a different question.
 
 
 32
 Oklahoma law says time is not of the essence unless the contract "expressly" provides otherwise. Okla.Stat.Ann. tit. 15, Sec. 174 (1993). Courts may consider the subject matter and the parties, but there must at least be something "in the language of the [contract] to support an implication that time is of the essence." Kaiser, 504 P.2d at 431. The settlement agreement, however, does no more than allow AER to set specific delivery dates. There is nothing in the contract to suggest that Roye's failure to meet some of those dates would entitle AER to treat the entire contract as breached, or even to reject late deliveries or pay less than the full amount in escrow in compensation for the delay. Furthermore, AER has offered no evidence in the record that shows time is typically of the essence of gas purchase contracts such as this one. Without such clear indications that time was intended to be of the essence, we cannot find the district court's conclusion to be clearly erroneous.
 
 
 33
 The district court thus did not clearly err in concluding that the delay did not substantially impair the value of the late installments or the contract as a whole. AER was obligated to accept the late installments despite the non-conformity, and is not entitled to damages for non-delivery.
 
 
 34
 iii. Damages for Delay
 
 
 35
 Even though AER cannot recover damages for non-delivery, it might still recover damages for the delay. Section 2-612 requires the buyer to accept substantially unimpaired installments, but it does not prevent an action to recover damages due to an uncured breach or non-conformity. See Gregory M. Travalio, The UCC's Three R's: Rejection, Revocation and (the Seller's) Right to Cure, 53 U.Cin.L.Rev. 931, 1002 (1984) (reasoning that if the seller's cure is not perfect, but merely reduces the non-conformity to the point that it is insubstantial, the buyer's remedy will be for damages even though it may not reject the installment or rescind the contract).
 
 
 36
 In this case, however, we affirm the district court's refusal to award damages for the delay. First, awarding damages for delay in these circumstances would compensate AER for losses that never occurred. AER suggests it would have lost profits had it accepted the late delivery of more expensive gas, because it would have been unable to pass on the higher cost or to sell the gas at all. But since AER did not accept the late gas, it never did lose the profits it claims it would have lost otherwise. The only loss AER actually suffered was that it paid for gas that it never received, and this loss was AER's own fault for rejecting the late installments.
 
 
 37
 Second, even if such hypothetical damages could be awarded, the district court found that AER did not prove them. We sustain this finding for the same reasons that we affirm the court's finding of no substantial impairment. AER never proved or quantified any lost profits, increased costs, or other damages it would have suffered had it accepted the late deliveries. The district court therefore did not err by refusing to award damages for Roye's delay.
 
 B. The Blue Jay Assignment
 
 38
 Roye also failed to deliver gas requested by AER's assignee, Blue Jay, in October, 1989. Effective October 1, 1989, AER agreed to assign temporarily to Blue Jay the right to receive delivery of up to 3,000 Mcf of gas per day from Roye. In a letter to Roye dated September 20, 1989, Blue Jay requested approximately 1,650 Mcf of gas per day during October, 1989. AER then notified Roye by letter dated October 10 that the assignment would be terminated on November 1, 1989.
 
 
 39
 On September 29, 1989, Roye suspended performance and demanded adequate assurances of performance under section 2-609. Appellant's App. at 142. On October 26, 1989, AER and Blue Jay sent Roye two letters assuring Roye that Blue Jay would comply with applicable law and other relevant provisions of the settlement agreement and that AER would perform all obligations under the settlement agreement. Id. at 145-48.
 
 
 40
 Roye apparently did not consider these letters to be adequate assurance, because it still did not deliver the nominated gas. If the assurances were adequate, Roye was obligated to perform thereafter. However, AER has not argued the adequacy of its assurances. Instead it has argued only that Roye had no reasonable grounds for insecurity and thus had no right to demand assurances in the first place. We therefore consider only whether Roye was justified in suspending its own performance and demanding adequate assurances from AER and Blue Jay.
 
 
 41
 The district court concluded that both sections 2-609 and 2-210(5) justified Roye's non-delivery. We need not consider whether there were reasonable grounds for Roye to demand assurance under section 2-609 because section 2-210(5) clearly permitted Roye's actions. Section 2-210(5) permits the non-assigning party to "treat any assignment which delegates performance as creating reasonable grounds for insecurity" and to demand adequate assurance of performance, regardless of whether there are otherwise reasonable grounds for insecurity.
 
 
 42
 We therefore affirm the district court's holding that AER is not entitled to damages for Roye's failure to deliver the October nominations.
 
 II. Roye's Cross-Appeals
 A. The Confidentiality Provision
 
 43
 Roye contends that AER willfully breached the confidentiality provision of the agreement and thus must pay liquidated damages of $100,000 along with attorney fees and costs. We must sustain the district court's conclusion that AER did not breach this provision unless it is clearly erroneous. Valley Nat'l Bank v. Abdnor, 918 F.2d 128, 130 (10th Cir.1990).
 
 
 44
 Roye contends that AER disclosed the agreement to both Blue Jay and Arkla Energy Marketing ("AEM"). Appellee's Br. at 33. Roye says this disclosure was the result of the assignment to Blue Jay and the disclosure of the agreement to people who were agents or employees of both AER and other distinct Arkla corporate entities. Apparently, employees of AEM acted as agents or attorneys-in-fact for AER, Blue Jay, or both.[1] Hugh Maddox, vice president of AEM, was an agent of AER in the assignment to Blue Jay, Appellant's App. at 131, and, judging from letters Blue Jay sent to Roye concerning the Blue Jay assignment, also functioned as an agent for Blue Jay. Id. at 143, 147-48. Joseph "Tony" Bouso, an employee of AEM, was also an agent of both AER and Blue Jay and was charged with administering the settlement agreement.[2]
 
 
 45
 While the district court initially framed as an issue the distinctness of AEM, AER, and Blue Jay, Appellant's App. at 18, it resolved the confidentiality issue by simply stating that "[w]hile Blue Jay was in form a separate corporation, Blue Jay had no employees and the same person, Tony Bouso, administered the Settlement Agreement on behalf of AER and Blue Jay. To find for Roye on its counterclaim would elevate form over substance." Arkla Energy Resources, No. CIV-90-110-C, slip op. at 14. Thus, despite Roye's initial contention that the agreement was disclosed to "Blue Jay Gas Company and possibly others," Appellant's App. at 7, the district court apparently considered only the relationship between Mr. Bouso, AER, and Blue Jay, with no mention of AEM.
 
 
 46
 Nevertheless, we affirm the district court. As to the neglected issue of disclosure to AEM, it is Roye's responsibility to provide an adequate record on appeal, and any discrepancies in the record are resolved in AER's favor. Deines v. Vermeer Mfg. Co., 969 F.2d 977, 978-79 (10th Cir.1992). Given the state of the record and the briefs, we cannot say that the agreement was improperly disclosed to AEM. Like the district court, Roye focuses on the alleged disclosure to Blue Jay through Mr. Bouso.
 
 
 47
 As for the disclosure to Blue Jay through Mr. Bouso, we agree with the district court that the confidentiality provision was not breached simply because Bouso, who knew the details of the agreement as an agent of AER, subsequently administered the agreement as an agent of Blue Jay. Bouso did not reveal the information to anyone else; in fact, Blue Jay has no employees to whom Bouso could have revealed confidential information. Nor did AER reveal the information to Bouso in his capacity as a Blue Jay agent, because Bouso already knew the details of the agreement as an agent of AER. There was therefore no disclosure.
 
 B. Attorney Fees
 
 48
 i. Section 936
 
 
 49
 After the district court entered its judgment, Roye filed an Application for an Award of Attorney Fees. It contended that under the Oklahoma statutory provision allowing the award of attorney fees, Okla.Stat.Ann. tit. 12, Sec. 936 (1988),[3] Roye was a "prevailing party" and thus entitled to reasonable attorney fees. AER responded that there was no "prevailing party" and thus the district court should not award any fees. The court denied Roye's application, finding no controlling authority but citing an Oregon case holding that if neither or both parties prevailed, the court should not award attorney fees even though an award to the "prevailing party" is mandatory. See Lawrence v. Peel, 45 Or.App. 233, 607 P.2d 1386, 1392 (1980).
 
 
 50
 We review the meaning of "prevailing party" under Oklahoma law de novo. See Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986). Although an award to a prevailing party is mandatory, Okla.Stat.Ann. tit. 12, Sec. 936; Ellis v. Lebowitz, 799 P.2d 620, 621 (Okla.1990), "the determination of which party prevails in cases of this sort is, like the award of attorney's fees, within the discretion of the trial judge." Owen Jones & Sons, Inc. v. C.R. Lewis Co., 497 P.2d 312, 314 (Alaska 1972); see also Wilkerson Motor Co. v. Johnson, 580 P.2d 505, 509 (Okla.1978) ("Award of attorney fees [under section 936] ... is addressed to the sound discretion of the trial court."). We may reverse the court's decision that Roye did not prevail only if the court abused its discretion. Supre, 792 F.2d at 961; Firemen's Ins. Co. v. Renegar, 856 P.2d 595, 596 (Okla.Ct.App.1993).
 
 
 51
 A prevailing party under section 936 must have prevailed upon the merits. GHK Exploration Co. v. Tenneco Oil Co., 857 F.2d 1388, 1391 (10th Cir.1988); Firemen's Ins., 856 P.2d at 596. Furthermore, section 936 allows only one prevailing party, which is the party that has "the most points at the end of the contest," or that receives the greatest affirmative judgment. Quapaw Co. v. Varnell, 566 P.2d 164, 167 (Okla.Ct.App.1977). However, when both parties successfully defend against major claims by the other, and thus no party receives an affirmative judgment, the court may decide that neither has prevailed. See Hutchison v. Kelton, 99 Idaho 866, 590 P.2d 1012, 1013 (1979) (holding that neither prevailed where both lost their affirmative claims); Sardam v. Morford, 51 Wash.App. 908, 756 P.2d 174, 175 (1988) (holding that neither prevailed where each successfully defended against a major claim by the other); cf. Owen Jones, 497 P.2d at 314 (holding that neither prevailed where one received around $7,000 and the other defeated a much larger claim).
 
 
 52
 The district court entered judgment in favor of Roye on AER's claims and in favor of AER on Roye's claims. Neither side received an affirmative judgment against the other. Furthermore, the district court found that Roye had breached the contract. We therefore hold that the district court did not abuse its discretion by concluding that neither was a prevailing party under section 936.
 
 
 53
 ii. Collateral Estoppel
 
 
 54
 Roye argues alternatively that AER is estopped from asserting that Roye is not the prevailing party. In October, 1991, Roye filed a Bill of Costs with the clerk of the district court pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, which allows costs in favor of the "prevailing party." Because AER did not object, the clerk then taxed costs against AER in favor of Roye, and AER did not appeal the clerk's order. That order was included in the final judgment. Roye asserts that AER's failure to oppose the taxation of costs estops AER from arguing that Roye is not the "prevailing party" entitled to attorney fees under section 936.
 
 
 55
 Collateral estoppel "prevents a party from raising an issue in a later action if that issue could have been litigated in the prior proceeding." McDowell v. Austin, 699 P.2d 1100, 1102 (Okla.1985). However, a motion for attorney fees is not a second action subject to collateral estoppel, but is part of the same action.
 
 
 56
 Even if collateral estoppel did apply to motions for attorney fees, the clerk's order did not present an opportunity to litigate whether Roye was the prevailing party under section 936. The "prevailing party" under Rule 54(d) is not necessarily a prevailing party under Oklahoma's section 936. See GHK Exploration, 857 F.2d at 1391-92 (demonstrating that a party may be entitled to costs under Rule 54(d) yet not be a prevailing party entitled to attorney fees under section 936). Even if AER were estopped from arguing that Roye was not a prevailing party under Rule 54(d), it would not be estopped from arguing that Roye is not a prevailing party within the meaning of Oklahoma's statute.
 
 
 57
 iii. Rule 68
 
 
 58
 Finally, Roye claims that it is entitled to attorney fees under Rule 68 of the Federal Rules of Civil Procedure. Rule 68 states that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." We must affirm the district court's refusal to grant attorney fees under Rule 68 unless it was an abuse of discretion, and must accept its underlying factual findings unless clearly erroneous. Supre, 792 F.2d at 961; Marryshow v. Flynn, 986 F.2d 689, 691, 694 (4th Cir.1993).
 
 
 59
 Prior to trial on February 22, 1991, Roye offered to allow judgment against itself for 100,000 Mcf of gas. AER responded with a Motion to Clarify Offer of Judgment, citing the ambiguity and incompleteness of Roye's offer, which was due primarily to the uncertain value of the gas. The district court held that Roye never satisfactorily clarified the offer, and Rule 68 therefore did not require awarding attorney fees to Roye.
 
 
 60
 We agree. Roye cannot invoke Rule 68 with an ambiguous offer. See Radecki v. Amoco Oil Co., 858 F.2d 397, 402 (8th Cir.1988). As the district court found, Roye never sufficiently clarified the value of its offer. Furthermore, the district court properly rejected Roye's argument that the value of the offer was irrelevant because AER didn't recover anything. In this case, the ambiguity was critical not because the offer must be accurately compared to the outcome at trial, but because the offeree must know what is being offered in order to be responsible for refusing the offer. The district court therefore did not abuse its discretion in refusing to award attorney fees under Rule 68.
 
 CONCLUSION
 
 61
 In light of the foregoing discussion, we AFFIRM the district court's judgment in favor of Roye on AER's claims, its denial of AER's motion for a new trial, its judgment in favor of AER on Roye's counterclaim, and its refusal to award Roye attorney fees under Oklahoma and federal law.
 
 
 
 [1]
 AER is a division of Arkla, Inc., and Blue Jay is a wholly-owned subsidiary of Arkla, Inc. The record does not reveal how AEM is affiliated with Arkla
 
 
 [2]
 Mr. Bouso nominated gas for both AER and Blue Jay. He signed AER nominations as "Supervisor, Gas Contract Administration," and signed the Blue Jay nomination as "Sr. Gas Contract Analyst." Appellant's App. at 129, 154
 
 
 [3]
 Section 936 says that "in any civil action to recover on ... [a] contract relating to the purchase or sale of goods ... the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."