FILED
United States Court of Appeals
Tenth Circuit

November 1, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANGELA GAYLE O'NEAL,

      Petitioner-Appellant,

v.

MILLICENT NEWTON-EMBRY,
Warden,

      Respondent-Appellee.

No. 10-6243
(D.C. No. 5:09-CV-00501-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY, EBEL,** and **HOLMES,** Circuit Judges.

---

In this case, petitioner-appellant Angela Gayle O'Neal, a state prisoner in

Oklahoma, appeals from the district court's denial of her petition for federal habeas relief

under 28 U.S.C. § 2254. The essence of O'Neal's habeas claim is that her Fourteenth

Amendment rights to equal protection and due process were violated when she was not

allowed to withdraw her plea of nolo contendere, while in another case, State v. Sharp, C-

2007-345 (Okla. Crim. App. 2007) (unpublished), a man in an allegedly materially

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

identical circumstance was allowed to do so. O'Neal's argument for why she should have been allowed to withdraw her plea was that her ignorance of one of Oklahoma's parole-eligibility rules rendered her plea involuntary.[1]

The district court denied relief with respect to this claim on the grounds that O'Neal had failed to exhaust it in state court. O'Neal then sought a certificate of appealability ("COA") from this Court, see 28 U.S.C. § 2253(c), asserting six grounds of error below. We determined that O'Neal had made a substantial showing of the denial of a constitutional right, see id. § 2253(c)(2), and granted COA on the following question:

> Whether petitioner's federal constitutional rights were violated by the Oklahoma Criminal Court of Appeal's failure to apply the holding of Pickens v. State, 158 P.3d 482 (Okla. Crim. App. 2007), to her case, in particular when it granted that relief in State v. Sharp, C-2007-345.

---

[1] Pleas must be knowing, voluntary, and intelligent in order to be constitutionally valid. See, e.g., Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005); 21 Am. Jur. 2d Criminal Law § 600. Those different modifiers denote unique guarantees, see Brady v. United States, 397 U.S. 742, 747-48 (1970), but courts sometimes omit one or more, or appear to use them somewhat interchangeably, when referring to the general constitutional requirement regarding pleas, see, e.g., Bousley v. United States, 523 U.S. 614, 618-21; Henderson v. Morgan, 426 U.S. 637, 644-45 (1976); McCarthy v. United States, 394 U.S. 459, 466-67 (1969); Hicks v. Franklin, 546 F.3d 1279, 1283, 1286 (10th Cir. 2008); United States v. Blackner, 721 F.2d 703, 708 (10th Cir. 1983).

In O'Neal's case and in other relevant cases concerning the parole eligibility rule at issue in this appeal, the Oklahoma Court of Criminal Appeals ("OCCA") has not uniformly relied on any one of those terms, but rather has used them fairly interchangeably. As such, and since our analysis would be the same regardless of the prong(s)—i.e., knowing, voluntary, or intelligent—on which the OCCA's rulings may rest, in this order and judgment we refer generally to plea (in)voluntariness, and not also knowingness and intelligence, simply for the sake of brevity.

Exercising jurisdiction under 28 U.S.C. § 2253(a), we affirm the dismissal of O'Neal's habeas claim, but for reasons other than the exhaustion rationale relied upon by the district court. We hold that O'Neal's equal protection claim fails on the merits because O'Neal's asserted premise, that her case was materially identical to the case in Sharp, is unfounded. We also reject O'Neal's due process claim as merely repetitive of her equal protection claim.

## I. BACKGROUND

### 1. Proceedings in state trial court

O'Neal was charged by information in September 2005 with first-degree manslaughter after killing a man in a drunk-driving accident. On November 6, 2006, the day her trial was set to commence, O'Neal announced to the trial court that she intended to waive her right to trial and to enter into a blind plea of nolo contendere in the Oklahoma trial court. The following week, on November 14, 2006, the court accepted O'Neal's nolo plea, having determined that it was entered voluntarily.

At the beginning of January 2007, O'Neal moved for, and obtained, new counsel. On January 22, 2007, the day before her scheduled sentencing, O'Neal's new attorney filed a motion to withdraw her nolo plea on multiple grounds, but not including the argument that her plea was involuntary because she had not been informed that, under Oklahoma law, she would be required to serve at least 85% of her sentence without the possibility of parole, see 21 Okla. Stat. Ann. 2001, § 13.1 (hereinafter "the 85% Rule"). At a hearing on February 20, 2007, the court denied O'Neal's motion to withdraw,

3

finding that O'Neal had been competent to enter her plea, that she fully understood her legal rights and the consequences of her plea, and that she had waived her rights voluntarily with the aid of her prior attorney. The court sentenced O'Neal to twenty years in prison, with all but the first fifteen suspended.

## 2. *The OCCA's denial of direct appellate relief*

Several months later, on August 20, 2007, O'Neal petitioned for certiorari in the Oklahoma Court of Criminal Appeals ("OCCA") in regards to her conviction and sentence. O'Neal asserted six grounds of error by the trial court, including that the trial court should have allowed her to withdraw her nolo plea on the basis that the plea was involuntary due to the alleged fact that she was never informed of the 85% Rule. In arguing that her alleged ignorance of the 85% Rule rendered her plea involuntary and therefore subject to withdrawal, O'Neal cited the OCCA's August 2006 decision in Ferguson v. State, 143 P.3d 218, 219 (Okla. Crim. App. 2006) (where defendant had entered into a negotiated nolo plea, holding that ignorance of the 85% Rule rendered defendant's plea involuntary), as well as the OCCA's May 2007 decision in Pickens v. State, 158 P.3d 482 (Okla. Crim. App. 2007) (applying the involuntary-plea rule announced in Ferguson to a situation with a blind nolo plea, like O'Neal's).

On January 11, 2008, the OCCA denied O'Neal's petition for certiorari on all grounds. With respect to the trial court's denial of O'Neal's motion to withdraw her plea, the OCCA held that O'Neal had waived her argument for withdrawal based on ignorance of the 85% Rule by failing to raise it in her motion to withdraw. The OCCA cited

4

Anderson v. State, 130 P.3d 273 (Okla. Crim. App. 2006), for the proposition that the argument had been available to O'Neal at the time of her motion, and observed that Rule 4.2(B) of the Rules of the OCCA precludes a defendant from raising an issue in her certiorari petition if she did not raise it in her application to withdraw her plea. The OCCA held that any error in regard to plea involuntariness vis-à-vis the 85% Rule was thus waived and the issue was therefore not properly before the court.

On January 28, 2008, O'Neal petitioned the OCCA for rehearing, asking the court to reconsider its denial of her certiorari petition. O'Neal reasserted that she should be afforded relief from her nolo plea pursuant to the holding of Pickens, and then pointed out that just a few weeks before the OCCA denied her certiorari petition, the OCCA granted relief pursuant to a similar argument in Sharp v. State, Case No. 2007-345 (Okla. Crim. App., Nov. 30, 2007) (unpublished). O'Neal asserted that Sharp held that Pickens announced a new rule of criminal procedure that must be applied to cases pending on direct review. Further, in that vein, O'Neal cited Griffith v. Kentucky, 479 U.S. 107 (1987), for the proposition that arbitrarily selective application of new rules of criminal procedure is unconstitutional. Accordingly, O'Neal contended, the OCCA's grant of relief in Sharp, and denial of relief in her case, unconstitutionally denied her equal protection and due process because "both cases [i.e., hers and Sharp's] were in precisely the same factual and procedural posture." Dist. ct. doc. 8-4, at 2.

On February 15, 2008, the OCCA denied O'Neal's petition for rehearing. The OCCA characterized O'Neal's petition as seeking rehearing solely on the grounds that

5

the OCCA's denial of her certiorari petition was in conflict with <u>Pickens</u>. The OCCA did not acknowledge <u>Sharp</u>. The OCCA recognized that <u>Pickens</u> was decided two months after O'Neal had petitioned for certiorari, but "having reviewed Petitioner's allegation[,] [found] that she is not entitled to rehearing." Dist. Ct. doc. 8-5, at 2. The OCCA said that it "fully considered <u>Pickens</u> in arriving at its [prior] decision" to deny O'Neal's certiorari petition. <u>Id.</u>

### 3. *The district court's denial of habeas relief, O'Neal's appeal, and the questions before this Court*

On May 13, 2009, O'Neal petitioned for a writ of habeas corpus in the Western District of Oklahoma. Her petition identified two grounds for relief: (1) "Violation of Equal Protection and Due Process" and (2) "Ineffective counsel." R. at 8-12. O'Neal's habeas petition was referred to a magistrate judge. The magistrate judge issued an initial recommendation, adopted by the district court, which led O'Neal to submit an amended habeas petition. Then, in a second recommendation, the magistrate judge rejected on the merits O'Neal's equal protection and due process claims. The district court, however, did not reach the merits of those claims, but rather rejected them on the grounds that O'Neal had failed to exhaust them in state court.

On October 19, 2010, O'Neal timely appealed the dismissal of her habeas petition. On April 8, 2011, we granted COA on the following question:

> Whether petitioner's federal constitutional rights were violated by the [OCCA's] failure to apply the holding of [<u>Pickens</u>] to her case, in particular when it granted that relief in [<u>Sharp</u>].

6

Thus, the only issues before us in this appeal are O'Neal's equal protection and due process claims. See 28 U.S.C. § 2253(c)(3) (stating that the scope of the COA circumscribes this Court's consideration of issues on habeas appeals).

We pause to emphasize certain issues we do not decide. First, to the extent that counsel for O'Neal seeks to raise an ineffective-assistance-of-counsel issue in the supplemental brief, that argument is outside the scope of the COA. See id. Likewise, we do not consider any direct claim that O'Neal's ignorance of the 85% Rule rendered her plea involuntary under federal jurisprudence—a claim that is not now asserted by O'Neal as a basis for habeas relief, and in any event would also be outside the scope of the COA. See id. Finally, we do not reach the question of whether a lack of exhaustion of O'Neal's equal protection and due process claims in state court bars us from granting habeas relief on those claims, as we deny O'Neal's petition on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## II. DISCUSSION

**A. Standard of Review**

We assume arguendo that the OCCA did not adjudicate O'Neal's claims on the merits, so its rulings are not subject to the highly deferential review standard of Antiterrorism and Effective Death Penalty Act ("AEDPA"), see 28 U.S.C. § 2254(d).

7

We review the district court's legal conclusions de novo and its factual findings for clear error, unless the district court "based its factual findings entirely on the state court record, [in which case] we review that record independently." Byrd v. Workman, 645 F.3d 1159, 1166-67 (10th Cir. 2011). In this case, the district court deemed O'Neal's equal protection and due process claims unexhausted and so made no legal conclusions applicable to our decision; though in any event, we draw legal conclusions de novo. The only factual findings made by the district court relevant to our analysis—e.g., dates and content of the state-court motions and orders—are based entirely on the state-court record, so we review that record de novo in making our factual findings. See id.

## B. Analysis

### 1. Equal Protection

The essence of O'Neal's equal protection claim is as follows: In Sharp, the OCCA allowed the defendant to withdraw his plea on the grounds that his plea was involuntary due to his ignorance of the 85% Rule, notwithstanding the fact that he had failed to raise that argument in his motion to withdraw. Whereas normally such a failure precludes a defendant from raising that issue on appeal to the OCCA, the OCCA held in Sharp that the defendant should retroactively receive the benefit of the rule stated in Pickens—that ignorance of the 85% Rule renders a plea involuntary—since Pickens was decided after Sharp had filed his motion to withdraw his plea, and Sharp's case was still pending on direct appeal. In contrast, a few weeks after the OCCA decided Sharp, the OCCA refused to afford the same relief to O'Neal, even though (O'Neal alleges) her

8

situation was identical to Sharp's in all material regards: namely, that she also had not been informed of the 85% Rule, and that Pickens was decided after she had already filed her motion to withdraw. O'Neal argues that this disparate application of the law to individuals in identical circumstances in different cases violated her right to equal protection. To that end, O'Neal cites Griffith v. Kentucky, 479 U.S. 314 (1987), in which the Supreme Court held that a court's failure to apply "a new rule for the conduct of criminal prosecutions," id. at 328, to criminal cases pending on direct review "violates the principle of treating similarly situated defendants the same," id. at 323. [2]

O'Neal's claim is fatally flawed. O'Neal and Sharp were not "similarly situated," Griffith, 479 U.S. at 323, in at least one crucial aspect—the timing of the newly declared rule relative to their respective motions to withdraw their pleas.[3]

_____

[2] Griffith did not expressly ground its holding in any one constitutional provision, see 479 U.S. at 322-23, but our holding does not rely on Griffith being construed strictly as an equal protection decision. We also make clear that we would reject O'Neal's equal protection claim even if she did not invoke Griffith, given the fundamental flaw in her argument, explained below: that she was not in fact similarly situated with Sharp.

[3] Neither the Sharp opinion—by which we mean the OCCA's November 30, 2007, order granting Sharp's second certiorari petition—nor any other material containing facts about Sharp or his case, was included in the appellate record presented to this Court. It does not appear that the opinion or any other material was included in any record below, either. We do not automatically accept O'Neal's bald assertions that she was in a situation materially identical to Sharp's, for the purpose of her legal claim under Griffith. Rather, the similar-situation premise is an element of O'Neal's equal protection claim, which she bears the burden of establishing. But O'Neal—who was represented by counsel before the conclusion of briefing in this appeal—has never offered any evidence or detailed explanation in support of the proposition that she and Sharp were similarly situated. (Insofar as counsel for O'Neal suggests that Appellee has admitted such a

Continued . . .

9

(i)     Timeline of events

To explain our conclusion that O'Neal and Sharp were not similarly situated for the purposes of Griffith, we set out the timeline of relevant OCCA decisions regarding the 85% Rule, as well as the relevant motions in O'Neal's and Sharp's respective cases.

On February 22, 2006, in Anderson v. State, 130 P.3d 273 (Okla. Crim. App. 2006), the OCCA first held that Oklahoma juries must be instructed on the effect and policy of the 85% Rule when a defendant is subject to that Rule, id. at 282, in light of the state's "truth in sentencing" legislation, id. at 278.  The Court reasoned that "common sense and elementary principles of statutory construction . . . compel[led] [that conclusion] in order to give effect to the will of the Legislature."  Id.

The following day, February 23, 2006, Sharp filed an application to withdraw his guilty plea.  See Sharp, C-2007-345, at *1.  That motion did not raise the argument that

_____

Cont.

conclusion, we disagree: we discern no such admission below, and on appeal Appellee repeatedly expressly denied that O'Neal and Sharp were similarly situated.)
        To assess the question of similar situation, the Court has retrieved the unpublished Sharp opinion, and takes judicial notice of it.  See Guttman v. Khalsa, 669 F.3d 1101 (10th Cir. 2012) ("[W]e may take judicial notice of public records.").  The Sharp opinion is thus the exclusive source of the facts of Sharp's situation—e.g., the dates of the relevant filings and rulings in Sharp's case—that we have before us to compare Sharp's situation to O'Neal's.  To the extent that other evidence or documents might have demonstrated other facts about Sharp relevant to this analysis, we note that "it is [O'Neal's] responsibility [as appellant] to provide an adequate record on appeal, and any discrepancies in the record are resolved in [Appellee's] favor."  Arkla Energy Resources v. Roye Realty and Developing, Inc., 9 F.3d 855, 865 (10th Cir. 1993); see also United States v. Dago, 441 F.3d 1238, 1251 (10th Cir. 2006).

10

ignorance of the 85% Rule rendered his plea involuntary.  See id.  The trial court denied

Sharp's motion to withdraw his plea on March 15, 2006, and Sharp appealed that denial

to the OCCA on June 9, 2006.  See id.

Then, on August 30, 2006, the OCCA held in Ferguson v. State, 143 P.3d 218

(Okla. Crim. App. 2006), that a defendant's negotiated nolo contendere plea was

involuntary because he had not been informed of the 85% Rule.  The OCCA held:

> Before entering a guilty or nolo plea, a defendant should be advised of the punishment range for the offense. . . . In the instant case, Petitioner . . . . did not learn about the 85% rule until after he pled guilty [sic: the petitioner actually pled nolo contendere] . . . . Under the circumstances presented here, we find that Petitioner's plea was not voluntarily and intelligently made.  Consequently, Petitioner should be allowed to withdraw his plea.

Id. at 219 (emphasis added).

Roughly five months later, on January 22, 2007, O'Neal filed her application to

withdraw her blind nolo plea; she did not raise ignorance of the 85% Rule as an argument

for plea involuntariness.  The state trial court denied her motion on February 20, 2007.

Soon thereafter, on February 21, 2007, the OCCA granted Sharp's pending

certiorari petition and "remanded the case for a new hearing on Sharp's Application to

Withdraw his Plea.  See Sharp, C-2007-345, at *1.  On March 29, 2007, the trial court

again denied Sharp's application to withdraw.  See id.  Sharp then again appealed to the

OCCA.  See id.

11

Then, on May 4, 2007, in Pickens, the OCCA confronted the case of a defendant who had entered into a blind nolo plea (as opposed to the negotiated nolo plea in Ferguson), and came to the same conclusion it had in Ferguson:

> This Court has held that a defendant has a right to know whether his sentences are subject to the 85% Rule when entering a negotiated plea. Ferguson v. State, 143 P.3d 218, 219 (Okla. Crim. App. 2006). We conclude that a defendant has a right to be informed of the 85% Rule when entering a plea, and make no distinction between a negotiated sentence and a blind plea to the trial court.

158 P.3d at 483.

Afterwards, on August 20, 2007, O'Neal petitioned for certiorari in OCCA in regards to her conviction and sentence, asserting as one ground of error below that her plea was involuntary in light of her ignorance of the 85% Rule.

On November 30, 2007, the OCCA granted Sharp's second certiorari petition, concluding that Sharp's ignorance of the 85% Rule at the time of his guilty plea rendered his plea involuntary. See Sharp, C-2007-345, at *2. In response to the prosecution's argument that Sharp had waived that argument "by not including it in his Application to Withdraw his pleas, id. at *2 n.1, the OCCA reflected that "new rules of criminal procedure must be applied to cases pending on direct review at the time the rule is announced," id. (citing Carter v. State, 147 P.3d 243, 244 (Okla. Crim. App. 2006)). The OCCA had just cited both Pickens and Ferguson in support of its holding that Sharp's plea was involuntary in light of his ignorance of the 85% Rule. See id. Then, having recognized the applicability of new rules to cases pending on direct review, the OCCA

12

held that "[a]s a result, Sharp receives the benefit of <u>Pickens</u> and <u>Ferguson</u>." <u>Id.</u>

Finally, on January 11, 2008, the OCCA rejected O'Neal's 85%-Rule argument for plea involuntariness in her certiorari petition. The OCCA did not mention <u>Sharp</u>, but it cited its February 2006 decision in <u>Anderson</u>, suggesting that the rule of <u>Anderson</u> was sufficient to make the 85%-Rule argument available to O'Neal when she filed her motion to withdraw her plea in January 2007. But because O'Neal had failed to raise that argument in her motion to withdraw her plea, the OCCA held that argument waived, pursuant to Rule 4.2(B) of the Rules of the OCCA.[4]

(ii)     Analysis and conclusion

Rule 4.2(B) had not changed during the pendency of O'Neal's appeal. Apparently, the OCCA simply found special circumstances in Sharp's case such that it excused Sharp from strict compliance with Rule 4.2(B), but it found no sufficient special circumstances in O'Neal's appeal similarly to excuse her from complying with Rule 4.2(B). The OCCA did not clearly articulate what the material difference was between Sharp and O'Neal. Nevertheless, "we may affirm on any grounds supported by the record" <u>Duncan v. Gunter</u>, 15 F.3d 989. It appears to us that the crucial distinction between Sharp and O'Neal—what makes them not similarly situated—has to do with whether, at the time they filed their respective motions to withdraw their pleas, the rule

---

[4] Rule 4.2(B) of the OCCA provides, in pertinent part, "[n]o matter may be raised in the petition for a writ of certiorari unless the same has been raised in the application to withdraw the plea, which must accompany the records filed with this Court." Okla. Stat. tit. 22, ch. 18 app. Rule 4.2(B).

that ignorance of the 85% Rule is grounds for withdrawal of a plea had already been declared. See Griffith, 479 U.S. at 322-23; see also United States v. Levy, 416 F.3d 1273, 1278 n.6 (11th Cir. 2005) ("Griffith . . . did not require that a dissimilarly situated defendant—one who did not preserve his objection below or on appeal—would necessarily benefit from the new constitutional rule. Instead, the Griffith holding is necessary to 'treat[ ] similarly situated defendants the same.' Parties who fail to raise timely claims of error are not similarly situated to those who properly preserved their claims." (citation omitted)), cert. den., 126 S.Ct. 643 (2005).

Based on the record before us, in Sharp's case, the rule was declared after Sharp had filed his application to withdraw his plea but while his case was pending on direct review, such that Sharp could enjoy the benefit of that rule, which was new in his case. See Griffith, 479 U.S. at 322-23. On the other hand, that rule was declared well before O'Neal filed her application to withdraw her plea, so O'Neal had no excuse for failing to raise the argument of plea involuntariness in her application to the trial court to withdraw her guilty plea. Thus, the OCCA could constitutionally conclude that O'Neal's argument was properly barred from the OCCA's consideration on certiorari, per Rule 4.2(B) of the OCCA, while being available to Sharp.

There are three OCCA decisions, discussed above, that are relevant to the rule that ignorance of the 85% Rule renders pleas involuntary: (1) Anderson, which held on February 22, 2006, that Oklahoma juries must be instructed on the 85% Rule in light of the state's truth-in-sentencing legislation, 130 P.3d at 278, and which the OCCA invoked

14

in denying O'Neal's certiorari petition by concluding that <u>Anderson</u> served to give O'Neal notice of the 85%-Rule argument for plea involuntariness for the purposes of Rule 4.2(B); (2) <u>Ferguson</u>, which held on August 30, 2006, that a defendant's negotiated nolo plea was involuntary because he had not been informed of the 85% Rule, 143 P.3d at 219; and (3) <u>Pickens</u>, which held on May 4, 2007, that a defendant's blind nolo plea was involuntary because he had not been informed of the 85% Rule, 158 P.3d at 483.

The first case, <u>Anderson</u>, is not the case to key on, nor was it relied upon—or even mentioned—by the OCCA in granting relief to Sharp. <u>Anderson</u>'s holding—that juries must be instructed on the 85% Rule—simply did not state the rule at issue in this case: namely, that plea-bargaining defendants must be informed of the 85% Rule. Nevertheless, even assuming that <u>Anderson</u> did state the rule that plea-bargaining defendants must be informed of the 85% Rule, the OCCA's disparate decisions in O'Neal's case and Sharp's case would be defensible. <u>Anderson</u> was decided merely a day before Sharp filed his motion to withdraw his plea, so he would not reasonably have been on notice of the 85%-Rule argument. Accordingly, the OCCA's Rule 4.2(B) might not have been applied to him, and retroactive relief would have been appropriate. O'Neal, on the other hand, filed her motion to withdraw her plea long after <u>Anderson</u> was issued, so she would have been properly deemed to be on notice of the 85%-Rule argument. Therefore, her omission of that argument from her motion could have constituted waiver under Rule 4.2(B), without violating <u>Griffith</u>.

The second case, <u>Ferguson</u>, is the key case that can explain the OCCA's disparate

treatment of Sharp and O'Neal.  Ferguson is the case in which OCCA announced its rule that ignorance of the 85% Rule renders defendants' pleas involuntary irrespective of the specific type of plea.  Ferguson stated broadly that "[b]efore entering a guilty or nolo plea, a defendant should be advised of the punishment range for the offense," 143 P.3d at 219 (emphasis added), without distinguishing between guilty pleas, negotiated nolo pleas, or blind nolo pleas.  See id.  Ferguson's rule that ignorance of the 85% Rule renders pleas involuntary was a newly declared one in Sharp's case, issued after he first sought to withdraw his guilty plea, but it had been in existence for some time before O'Neal first filed her application to withdraw her plea.  Sharp filed his application to withdraw his plea on February 23, 2006—about half a year before Ferguson was issued on August 30, 2006—whereas O'Neal filed her application to withdraw her plea on January 22, 2007— several months after Ferguson was issued.  Sharp could not have asserted Ferguson in his application to withdraw his plea whereas O'Neal could have (and should have) asserted Ferguson when she sought to withdraw her plea.  Therefore, the OCCA did not treat "similarly situated defendants" differently, Griffith, 479 U.S. at 323, in Sharp's and O'Neal's respective cases, as O'Neal contends.

### 2. *Due Process*

O'Neal has continuously emphasized her equal protection theory for relief— relying chiefly on Griffith and complaining that Sharp was granted relief while she was not—although she has generally mentioned both the Equal Protection Clause and the Due Process Clause in asserting a Fourteenth Amendment violation.  The only point at which

16

O'Neal substantially (though briefly) attempts to develop an independent argument for her due process claim is in her supplemental appellate brief. But even there, her argument boils down to an equal protection argument. She notes our holding that "[t]he United States Supreme Court has suggested that, in rare circumstances, a determination of state law can be 'so arbitrary or capricious as to constitute an independent due process . . . violation,'" Cummings, 506 F.3d at 1237 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)), Supp. Aplt. Br. at 19, and proceeds to ask, "What could be more arbitrary and capricious than for a court, within just a few weeks, to treat to identically situated appellants differently?" Supp. Aplt. Br. at 19.

However, the Due Process Clause and Equal Protection Clause "trigger[] . . . distinct inquir[ies]":

> "'Due Process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. 'Equal Protection,' on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable."

Evitts v. Lucey, 469 U.S. 387, 405 (1985) (quoting Ross v. Moffitt, 417 U.S. 600, 609 (1974)).

O'Neal has offered no argument, aside from her disparate treatment in comparison to Sharp, as to how there was any lack of "fairness between the State and [herself]." Evitts, 469 U.S. at 405. We thus reject O'Neal's due process claim as redundant with her equal protection claim. See id. And the OCCA's determination of state law in this case was not otherwise so arbitrary or capricious as to constitute an independent due process

17

violation, see Cummings, 506 F.3d at 1237.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of O'Neal's habeas petition.


Entered for the Court


David M. Ebel
Circuit Judge

18

No. 10-6243, O'Neal v. Newton-Embry.

**KELLY**, Circuit Judge, dissenting.

I agree with the court that <u>Anderson v. State</u>, 130 P.3d 273 (Okla. Crim. App. Feb. 22, 2006) is not the case on which to reject Ms. O'Neal's equal protection claim; it simply does not apply to defendants who plead. I disagree with the court that Mr. Sharp and Ms. O'Neal are not similarly situated because Ms. O'Neal could have raised her claim based on <u>Ferguson v. State</u>, 143 P.3d 218 (Okla. Crim. App. Aug. 30, 2006) (negotiated nolo plea), when she filed her application to withdraw her blind nolo plea on January 22, 2007. The fact remains that <u>Pickens v. State</u>, 158 P.3d 482 (Okla. Crim. App. May 4, 2007), announced that the 85% rule would extend to all negotiated and blind pleas (including Ms. O'Neal's blind nolo plea and Mr. Sharp's guilty plea). The OCCA then applied the new rule in Mr. Sharp's case, but not that of Ms. O'Neal. Such selective application of the rule to similarly situated defendants on appeal violates equal protection. <u>See</u> <u>Griffith v. Kentucky</u>, 479 U.S. 314, 323, 328 (1987).

The OCCA apparently recognized the obvious importance of <u>Pickens</u> when, in denying Ms. O'Neal's certiorari rehearing petition said that it fully considered it.[5] D. Ct. (ECF) Doc. 8-5 at 2. Indeed, <u>Pickens</u> is on all fours; the dissent in that

---

[5] Thus, I would not reject Ms. O'Neal's claim based upon a failure to exhaust given the date of <u>Pickens</u>. It is not clear what more she could have done—or what more reasonably

Continued . . .

case tells us that Mr. Pickens failed to raise the 85% rule in his application to withdraw before the trial court, yet the OCCA still reached the merits of his claim and granted him relief. 158 P.2d at 484 (Lumpkin, J., dissenting). Pickens applies worlds more than Anderson which the OCCA applied in rejecting Ms. O'Neal's certiorari petition. D. Ct. (ECF) Doc. 8-3 at 3. Although the court notes that we may affirm on any basis finding support in the record, we cannot ignore the stated basis of the OCCA's decisions and its application of Rule 4.2(B). For example, this court concludes that Mr. Sharp would be entitled to an exception to Rule 4.2(B) because his motion to withdraw came in one day after Anderson—a completely speculative conclusion. Having announced a new rule, Oklahoma must apply it evenly and on a principled basis.

---

Cont.

could be expected of her—to exhaust. Moreover, because the OCCA indicated that it actually considered Pickens and its import is apparent, the purpose behind exhaustion would not be served.