FILED
United States Court of Appeals
Tenth Circuit

June 12, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WICHITA FIREMEN'S RELIEF
ASSOCIATION,

      Plaintiff - Appellant,

v.

KANSAS CITY LIFE INSURANCE
COMPANY,

      Defendant - Appellee.

Nos. 17-3047 & 17-3128
(D.C. No. 6:11-CV-01029-KGG)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS** and **MCHUGH,** Circuit Judges.
_____

These appeal concern a dispute about attorney fees and costs. They stem from a

breach of contract suit about insurance coverage and benefits.

In 2010, Captain Urban Eck, a firefighter for the City of Wichita, Kansas, suffered

an anatomical heart rupture while fighting a fire. After several weeks of worsening

conditions, he required surgery. Shortly after, he died due to complications from surgery.

Captain Eck was a member of Wichita Fireman's Relief Association ("WFRA"),

an organization established to receive and disburse funds for the benefit of its members

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and their beneficiaries under the Firefighters Relief Act, K.S.A. § 40-1701, *et seq.* WFRA contracted with Kansas City Life Insurance Co. ("KCL") for a life insurance policy to benefit its members. As a named beneficiary, WFRA sued KCL for breach of contract after KCL denied WFRA's application for a $100,000 accidental death and dismemberment ("AD&D") benefit for Captain Eck. The district court granted summary judgment to KCL, but the Tenth Circuit reversed and remanded. KCL offered to settle under Federal Rule of Civil Procedure 68, but WFRA proceeded to trial and won a jury verdict on the issue of coverage, entitling it to the value of the AD&D benefit plus interest.

WFRA moved for attorney fees under K.S.A. § 40-256, which authorizes attorney fees when an insurance company has denied a benefit "without just cause or excuse"—or in "bad faith." The magistrate judge held a bench trial on the motion and denied attorney fees to WFRA. Both parties then filed bills of costs. KCL moved for post-settlement offer costs, arguing under Rule 68 that WFRA had refused a settlement offer that was worth more than its jury award. The magistrate judge granted costs to KCL and not to WFRA.

WFRA now appeals the attorney fees and costs rulings. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the denial of attorney fees to WFRA and the award of post-settlement costs to KCL. First, because a reasonable person could have determined that Captain Eck's claim should be denied, there was "just cause or excuse" for KCL's denial and thus no basis for awarding attorney fees to WFRA under K.S.A. § 40-256.

2

Second, because KCL's settlement offer to WFRA was valid under Rule 68, KCL was entitled to costs.

## I. BACKGROUND

### A. *Factual Background*

### 1. The Insurance Contract and the AD&D Rider

WFRA's group insurance policy with KCL included an AD&D rider. The rider's "Benefit" section provided that the AD&D benefit would be paid upon satisfactory proof that:

(1) a loss "results directly and independently of all other causes from accidental bodily injuries,"

(2) the "accident which caused the loss" happened while the person suffering the loss was insured under the rider, and

(3) the loss happened within 180 days "after the accident."

App. At 130. The terms "accident" and "accidental bodily injury" were not defined in the policy or its rider.

The "Exclusions" section in the rider stated that:

"No amount will be payable for loss caused by, contributed to or resulting from . . . (5) bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease[.]" ("Exclusion 5").

*Id.* at 131.

3

2. **The Fire and Captain Eck's Medical Condition**

According to the magistrate judge, the parties "were essentially in agreement"

regarding the following description of Captain Eck's medical condition:[1]

> [Captain Eck] was in apparent good health with no history of
> heart problems when, on December 13, 2009, he participated
> in fighting a large fire. He exerted himself physically in that
> activity, but there is no evidence this exertion was out of the
> ordinary for a firefighter. Immediately following the fire on
> December 13, he participated in routine medical monitoring.
> He uncharacteristically required a longer time to return to
> baseline vital signs. At his next duty shift on December 16,
> 2009, he reported feeling unusually tired and congested and
> could not recover as he normally did after exertion. He told
> others he felt he had never fully recovered from the
> December 13th fire.
>
> On December 18 and 19, 2009, Captain Eck sought medical
> care for these and other progressive symptoms of shortness of
> breath, chest tightness, and difficulty breathing while lying
> flat. He visited his physician and a cardiac specialist.
>
> Physicians concluded that Captain Eck had ruptured chordae
> tendineae, which are the parachute-string-like structures
> supporting a heart valve leaflet. This caused mitral valve
> insufficiency, which required surgery. It was found that
> Captain Eck had a pre-existing condition called myxomatous
> degeneration, a progressive condition which compromises the
> strength of the chordae. This condition, although
> asymptomatic, predisposed his heart to the rupture suffered
> when fighting the fire.
>
> Captain Eck was placed on medication, hospitalized and
> released, and surgery was scheduled for December 29, 2009.
> He returned to the hospital to undergo surgery to repair the

---

[1] On appeal, KCL contests the district court's finding that "exertion while fighting the fire" caused the chordal rupture, arguing that this is a "matter of opinion" rather than a "'fact' that could be directly verified." Aplee. Br. at 42-43. The parties do not otherwise contest the district court's factual findings.

rupture. During the surgery, the surgeon inadvertently kinked an artery, which caused a heart attack. The heart attack directly resulted in Captain Eck's death. The physicians concluded that the rupture of the chordae was an acute event which happened as a result of extreme physical exertion while fighting the fire. The documents included the death certificate signed by his physician Dr. Koehler certifying that the "manner of death" was "natural." Dr. Koehler could have chosen "accident" on that form.

*Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, 237 F. Supp. 3d 1135, 1137-38 (D. Kan. 2017) (footnote omitted).

3. **WFRA's Submission of AD&D Claim**

Shortly after Captain Eck's passing, WFRA submitted a claim to KCL on his behalf for the full amount of coverage under the policy—$100,000 for life insurance and $100,000 for AD&D insurance. KCL's senior claims examiner requested further information from WFRA. In addition to the required insurance forms, WFRA responded by providing a death certificate; a report from Dr. Timothy Koehler, Captain Eck's primary care physician; and a report from Dr. Paul Uhlig, his cardiologist.

a. *Death certificate*

The death certificate, signed by Dr. Koehler, listed the "Immediate Cause" of death as "[m]assive acute myocardial infarct" from "[c]omplications from mitral valve annulus placement." App. at 7692. It said that "[s]evere mitral regurgitation aggravated by smoke/chemical inhalation" necessitated the surgery. *Id.* Under "Manner of Death," the death certificate listed "Natural." *Id.*

5

b. *Dr. Koehler's report*

Dr. Koehler's report said that Captain Eck's "extreme physical exertion" during the firefight led to "damage to chordae structures." App. at 3283. He also noted a cardiac condition found during the examination of Captain Eck before the surgery—sinus tachycardia—suggestive of a chronic heart issue.

c. *Dr. Uhlig's report*

Dr. Uhlig's report also identified exertion during the fire as the immediate cause of the chordal rupture, which then caused the mitral valve prolapse. He noted that Captain Eck had "myxomatous degeneration," "a condition of weakening and elongation of heart valve tissues," which was found during surgery. App. at 3399. He stated, "[m]any patients with myxomatous degeneration live normal lives despite this condition, however rupture of chordae tendineae can happen. In the case of Captain Eck, myxomatous degeneration was an unrecognized predisposing condition making rupture of the chordae tendineae more likely." *Id.* As the condition can be asymptomatic, Dr. Uhlig concluded that the "rupture of Captain Eck's chordae tendineae could [not] have been foreseen or prevented." *Id.*

4. **KCL's Denial of WFRA's AD&D Claim**

a. *KCL committee*

Upon receiving these documents, KCL promptly paid the $100,000 life insurance benefit to WFRA. It decided the AD&D claim needed further review and convened a committee consisting of (1) Dr. Charlotte Lee, KCL's medical director; (2) Matthew O'Connor, legal counsel; (3) Dale Dake, assistant vice president of new business; (4)

6

Anne Snoddy, vice president of claims; and (5) Donna Shields, manager of customer service and claims.

The committee's analysis of the AD&D claim focused on two key provisions in the insurance policy described above: (1) the benefit description in the policy's AD&D rider, stating that benefits are payable when the loss "results directly and independently of all other causes from accidental bodily injuries"; and (2) Exclusion 5 of the rider, stating that "[n]o amount will be payable for loss caused by, contributed to or resulting from: . . . bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease." App. at 130-31. KCL's committee thus considered whether the firefighting was the direct and independent cause of Captain Eck's death and whether other contributing illness or disease factors rendered the claim ineligible.

KCL had no official policies or guidelines to evaluate Captain Eck's AD&D claim. The committee met twice before unanimously denying it.[2]

---

[2] The parties dispute what took place during the committee's deliberations. WFRA argues, based on witness testimony at trial, that the committee members were inexperienced, only Dr. Lee consulted the medical record, Mr. O'Connor did not do sufficient legal research, and the committee did not fully understand Dr. Lee's conclusions regarding the cause of Captain Eck's death. *See, e.g.,* Aplt. Br. at 10-14. KCL argues that the committee members had significant relevant experience and understood Dr. Lee's conclusions. *See, e.g.,* Aplee. Br. at 3-11. The magistrate judge, in the attorney fees order, did not explicitly credit either account, finding them not relevant to whether WFRA should be awarded attorney fees. *Wichita Firemen's Relief Ass'n*, 237 F. Supp. 3d at 1141 . ("This case is [] not about a failure to perform an adequate fact investigation. Plaintiff's complaints concerning the quality of the factual investigation are illogical in light of the fact, as recognized in Plaintiff's memorandum, that KCL's medical director agreed with Captain Eck's physicians on the key medical facts and on causation.") (citations and quotations omitted).

7

b. *Dr. Lee's statement*

After the first meeting, Dr. Lee was asked to submit her written conclusions. She prepared a "Medical Director Statement" on the "question of whether or not the deceased died from an accidental cause of death." App. at 7397, 7472. She recommended denying Captain Eck's AD&D claim because it did not satisfy the two provisions quoted above. In her opinion, the surgical error made Captain Eck's death ineligible for the AD&D benefit:

> Even though extreme exertion can contribute to rupturing of a chorda in someone who has pre-existing valvular or coronary artery disease, I do not consider his death as having been caused by bodily injuries suffered while acting as a fire fighter . . . [T]he fact that the immediate cause of death was the heart attack that was suffered as a result of compr[om]ising the coronary artery during surgical treatment of his valve, this death is considered a direct result of that surgery and hence is an excludable event.

*Id.* at 4709.[3]

---

[3] Dr. Lee also stated that "[t]he [chordal] rupture was felt to have been acute and likely a result of extreme exertion during his fire-fighting activities on December 13. I do not have access to his medical records [covering the period] prior to his death, so will not comment on his previous cardiac status." App. at 4709. In her deposition, Dr. Lee stated that she meant to say she did not have access to his medical records covering the period "prior to the fire." *Id.* at 2980.15. She did not use Captain Eck's "previous cardiac status" as a reason for denial in her letter, but noted "[t]here is reportedly a family history of coronary artery disease. He was found at autopsy to have myxomatous degeneration of the mitral valve, but it is not known whether this was known prior to death. Such a change in the valve is not an acute change, rather is either present [at] birth or comes about gradually over time." *Id.* at 4709.

8

c. *Mr. O'Connor's role*

Based on his legal and medical research, Mr. O'Connor concluded the claim should be denied. At his deposition, he could not specify what sources he consulted or weighed. Mr. O'Connor drafted the first denial letter to WFRA.

d. *First denial letter*

KCL's first denial letter to WFRA cited the relevant portions of the rider and stated its reasons to deny coverage: "the death was not caused directly and independently of all causes from accidental injury as the insured's underlying heart condition, as well as circumstances surrounding the surgery, contributed to his death and therefore, the applicable exclusions of the policy apply." App. 2174. KCL gave WFRA 60 days to appeal.

e. *WFRA's appeal and KCL's second denial letter*

WFRA appealed and provided further medical documentation. Mr. O'Connor, in consultation with Ms. Snoddy and Ms. Shields, denied the appeal. The second denial letter cited the two passages from the rider—the "direct and independent" requirement and Exclusion 5—to support that "at least two other factors contributed to [Captain Eck's] death, precluding the payment of the ADB [(Accidental Death Benefit)]":

> (1) First, Mr. Eck suffered from an underlying medical condition, namely myxomatous degeneration of the mitral valve in his heart. Such a change in one's heart valve is not an acute change; rather, it is either present at birth or comes about gradually over time. Indeed, Mr. Eck may not have known that he suffered from this underlying condition. This condition contributed to Mr. Eck's death. As a result, under the terms of the ADB

9

rider quoted above, KCL is not obligated to pay the ADB benefits.

(2) Second, the actions of the surgeon in the attempted repair of Mr. Eck's degenerative heart condition appear to have contributed to his death. Specifically, during the surgery, Mr. Eck's coronary artery was compromised causing him to suffer a heart attack which contributed to his death. The compromising occurred as a result of surgical treatment of Mr. Eck's underlying degenerative heart condition. As your letter acknowledges, '[Eck] ultimately died from complications arising from surgical treatment of the physical injury he sustained fighting the fire.' As such, under the terms of the ADB rider quoted above, KCL is not obligated to pay the ADB benefits.

App. at 4920-21 (formatting altered).

## B. *Procedural Background*

### 1. **Removal and Consent to Magistrate**

WFRA sued in state court for breach of contract. KCL removed the case to federal court based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441. The parties consented to the magistrate judge's "conduct[ing] all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings." App. at 175; *see* 28 U.S.C. § 636(c) (allowing parties to consent to having a United States magistrate judge conduct proceedings and enter judgment).

### 2. **KCL's Rule 68 Settlement Offer**

Under Federal Rule of Civil Procedure 68(a), "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." If the opposing party obtains a judgment "not more favorable than

10

the unaccepted offer," it "must pay the costs incurred [by the offeror] after the offer was made." Fed. R. Civ. P. 68(d).

On October 10, 2011, KCL made the following Rule 68 offer of judgment to WFRA: "(1) The principal amount of $101,000, such amount to include WFRA's request for attorneys' fees; plus (2) Prejudgment interest . . . from January 25, 2010 through October 10, 2011, such interest being in the amount of $17,266.85; plus (3) WFRA's costs now accrued, not to include attorneys' fees." App. at 214.

WFRA moved to clarify KCL's offer, asking for "a ruling by the court on the issue of whether or not costs including attorneys' fees pursuant to K.S.A. § 40-256, are fairly and reasonably included in the offer." App. at 178. The motion continued: "If the court finds that they are, then plaintiff rejects the [offer]. If the court finds they are not, and that the acceptance of the [offer] will result in a hearing on the reasonable amount of costs to be awarded, including attorneys' fees, then [WFRA] accepts the offer." *Id.* at 178-79. In response to the motion, KCL explained that the $101,000 offer included any attorney fees but did not include "costs."[4] The magistrate judge found KCL's explanation sufficiently clear. WFRA thus declined the offer.

3. **Summary Judgment for KCL**

Both parties filed cross motions for summary judgment. The magistrate judge granted summary judgment to KCL, stating that the "undisputed material facts establish

---

[4] KCL explained that the offer "pays a specified sum for [WFRA's] claim for breach of contract and request for attorney's fees [clause 1] and then pays all of WFRA's non-attorney's fees [clause 3] . . . ." App. at 241 (brackets altered).

11

that the decedent's death did not 'result directly and independently of all other causes from accidental bodily injuries' within the meaning of the policy coverage provision." *Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, No. 11-1029-KGG, 2014 WL 588064, at *1 (D. Kan. Feb. 14, 2014) (quoting insurance policy rider).

WFRA thus could not establish an "accident" or "accidental bodily injury" "pursuant to the terms of the insurance contract." *Id.* at *5 (capitalization altered). "[T]here was no 'accident' as that term is defined by the relevant case law." *Id.* at *8.

The magistrate judge said that, "[n]o matter how extreme the conditions [of fighting the fire], the fact remains that [Captain Eck] was performing the job for which he was trained and employed. By fighting a fire, [he] was not subjected to an 'unexpected event' accompanied by a 'manifestation of force.'" *Id.* at *9 (quoting the definition of "accident" in *Gilliland v. Ash Grove Lime & Portland Cement Co.*, 180 P. 793, 794 (Kan. 1919)).

Even taking WFRA's view of the medical issues—that the Captain's death "was the result of an acute rupture of the chordae tendineae caused by extreme physical exertion while fighting the fire," *id.* at *4—the magistrate judge said there was no "unexpected manifestation of force" like "a portion of the [building] structure collaps[ing] on him or under him," and there was thus no "accident" under Kansas law, *id.* at *3.

4. **Tenth Circuit Reversal**

On appeal, this court reversed and remanded, concluding summary judgment was inappropriate because "genuine issues of material fact exist as to whether the rupture of

12

chordal structures within Mr. Eck's heart, brought upon by extreme exertion in fighting a fire, constituted 'accidental bodily injury.'" *Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, 609 F. App'x 530, 535 (10th Cir. 2015) (unpublished).

5. **Jury Trial**

At trial after remand, the jury found for WFRA on the coverage issue, awarding it the $100,000 AD&D benefit.

6. **Post-Trial Orders on Attorney Fees and Costs**

After the jury trial, WFRA moved for attorney fees under K.S.A. § 40-256, arguing that KCL's denial of Captain Eck's claim was made in bad faith—"without just cause or excuse." The magistrate judge conducted a bench trial and denied WFRA's attorney fees motion. The court found KCL had just cause or excuse to deny coverage on three "good-faith" grounds:

> (1) Captain Eck's loss does not qualify under the policy's "Benefits" section because the chordal ruptures leading to his death are not an "accidental bodily injury." *Wichita Firemen's Relief Ass'n*, 237 F. Supp. 3d at 1142.
>
> (2) Captain Eck's loss does not qualify under the policy's "Benefits" section because fighting the fire did not "directly and independently" cause his death. Captain Eck's "predisposing and progressive condition (myxomatous degeneration)" was also a cause. *Id.*
>
> (3) Captain Eck's loss triggers the policy's "Exclusion 5," since the progressive deterioration of his heart structures is a "bodily . . . illness or disease" that contributed to or caused the loss. Relatedly, the surgery to repair Captain Eck's heart was a "surgical treatment of the illness or disease" that contributed to or caused the loss. *Id*. at 1142-43.

13

KCL filed a bill of costs requesting post-settlement-offer costs under Federal Rule of Civil Procedure 68(d) because its unaccepted offer was more favorable to WFRA than the final judgment. The court granted KCL's motion, awarding it costs of $24,527.11.

## II. DISCUSSION

The magistrate judge did not abuse his discretion when he (1) denied WFRA's motion for attorney fees under K.S.A. § 40-256 because a reasonably prudent person facing the same facts as KCL could have denied Captain Eck's AD&D coverage with just cause, or (2) awarded post-offer-of-judgment costs to KCL because KCL's Rule 68 offer was not ambiguous or a sham.

### A. *Attorney Fees Under K.S.A. § 40-256*

This section discusses whether the magistrate judge erred when he denied WFRA's motion for attorney fees under K.S.A. § 40-256. After describing our standard of review and relevant legal background, we explain why the magistrate judge did not abuse his discretion in deciding KCL had just cause to deny Captain Eck's claim.

### 1. Standard of Review

We review the magistrate judge's attorney fees decision for abuse of discretion. We review the legal analysis de novo and factual findings for clear error. *See Hofer v. Unum Life Ins. Co. of Am.*, 441 F.3d 872, 884 (10th Cir. 2006) (applying this standard of review to an attorney fees award under K.S.A. § 40-256 in a diversity case); *see M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 (10th Cir. 2009); *Parks v. Am. Warrior, Inc.*, 44 F.3d 889, 892 (10th Cir 1995). "Under the abuse of discretion standard, the decision of a trial court will not be disturbed unless the appellate court has a definite

14

and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." In re *Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1017 (10th Cir. 2017) (quotation omitted).

2. **K.S.A. § 40-256 and Reasonable Person Standard**

Under Kansas law, courts determine whether an insurance company has denied a claim in bad faith under a reasonable person standard.

K.S.A. § 40-256 provides that after a judgment for policy coverage against an insurance company, "if it appear[s] from the evidence that such company . . . has refused *without just cause or excuse* to pay the full amount of such loss, the court . . . shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs." (emphasis added).

"[T]he phrase 'without just cause or excuse' as used in K.S.A . . . 40-256, means a frivolous and unfounded denial of liability." *Koch v. Prudential Ins. Co. of Am.*, 470 P.2d 756, 760 (Kan. 1970); *see also Clark Equip. Co. v. Hartford Accident & Indem. Co.*, 608 P.2d 903, 907 (Kan. 1980) ("[D]enial of liability must be patently without any reasonable foundation [to find for attorney fees.]"); *Allied Mut. Ins. Co. v. Gordon*, 811 P.2d 1112, 1125 (Kan. 1991) ("Denial of payment that is not arbitrary, capricious, or in bad faith will not give rise to an award of attorney fees.") (citation omitted).

"[I]f there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay 'without just cause or excuse.'" *Koch*, 470 P.2d at 760; *accord Glickman, Inc. v. Home Ins. Co.*, 86 F.3d 997, 1002 (10th Cir. 1996) ("There can

15

be no dispute that under Kansas law the accepted test for determining the existence of 'just cause or excuse' for purposes of § 256 is whether the insurance company's refusal is based on a bona fide controversy over policy coverage."). "[W]hether there was any reasonable ground for contesting the claim depends upon circumstances existing when payment is withheld or liability is declined." *Koch*, 470 P.2d at 760.

The Kansas courts have recognized an objective reasonable person test to determine whether an insurance company has denied a claim without just cause or excuse. "The circumstances confronting the insurer when payment of loss is denied determines the question, and the circumstances are to be judged as they would appear to a reasonably prudent man having a duty to investigate in good faith and to determine the true facts of the controversy." *Watson v. Jones*, 610 P.2d 619, 626 (Kan. 1980); *see also Friedman v. Alliance Ins. Co.*, 729 P.2d 1160, 1167 (Kan. 1986). "An imperfect investigation, standing alone, is not sufficient cause for recovery [of attorney fees] where the insurer, in fact, has objectively reasonable basis to deny coverage." *Wiles v. Am. Family Life Assur. Co.*, 350 P.3d 1071, 1082 (Kan. 2015) (quoting Steven Plitt et al., 14 *Couch on Insurance* § 207:25 (3d ed. 2005)).

Whether there was a reasonable and non-frivolous ground for denying a claim is "not necessarily determined by the outcome of the ensuing litigation." *Brown v. Combined Ins. Co. of Am.*, 597 P.2d 1080, 1084 (Kan. 1979) (quoting *Koch*, 470 P.2d at 760). "The statutory penalty is not to be imposed merely for the reason that it turned out at the trial in the district court, there was, in reality, no reason for denial of liability." *Koch*, 470 P.2d at 760.

16

In sum, so long as an insurer had a reasonable, non-frivolous basis to deny a claim for insurance benefits, it cannot be liable for attorney fees under K.S.A. § 40-256.

3. **Analysis**

As set forth above, the district court listed three grounds to deny WFRA's motion for attorney fees. We need rely only on the following ground to affirm: A reasonable person could have denied the AD&D claim based on Captain Eck's pre-existing condition having contributed to his cause of death. This ground is neither "frivolous," *Koch*, 470 P.2d at 760, nor "patently without any reasonable foundation," *Clark Equip. Co.*, 608 P.2d at 907, nor "arbitrary, capricious, or in bad faith," *Allied Mut. Ins. Co.*, 811 P.2d at 1125.

a. *Preexisting condition as contributing cause*

According to the magistrate judge, the parties agreed that "Captain Eck had a pre-existing condition called myxomatous degeneration, a progressive condition which compromises the strength of the chordae." *Wichita Firemen's Relief Ass'n*, 237 F. Supp. 3d at 1138. This condition "predisposed his heart to the rupture suffered when fighting the fire." *Id.* Even though the "physicians concluded that the rupture of the chordae was an acute event which happened as a result of extreme physical exertion while fighting the fire," *id.*, a reasonable person could conclude the preexisting condition contributed to the rupture.

The preexisting condition weakened Captain Eck's chordae, making them more prone to rupture. A "reasonably prudent man," *Watson*, 610 P.2d at 626, could determine that (1) Captain Eck's loss did not result "directly and independently of all other causes,"

17

as required by the policy's benefit definition; or (2) Captain Eck's claim was ineligible under Exclusion 5 because his preexisting condition was a "bodily . . . illness or disease" that contributed to the loss.[5]

The magistrate judge's rejection of WFRA's attorney fees motion was not an abuse of discretion. The court did not make a "clear error of judgment" or "exceed[] the bounds of permissible choice in the circumstances" in finding that KCL had "just cause or excuse" for its coverage denial. In re *Nat. Gas Royalties*, 845 F.3d at 1017.[6]

---

[5] As *Watson* explains, the reasonable person standard is not tied to the insurer's rationale to deny a claim. 610 P.2d at 626. Although KCL, in its two denial letters, justified its denial on much the same basis we identify here, the test is what a reasonable person could have decided.

[6] WFRA points out that Kansas courts, when reading insurance policies requiring coverable accidents to be the sole cause of a loss, do not always read exclusivity in the strict sense. Aplt. Br. at 42. In *Continental Casualty Co. v. Colvin*, 95 P. 565 (1908), the Kansas Supreme Court held that:

> An injury may be said to be the sole producing cause of death when it stands out as the predominating factor in the production of the result. It need not be so violent and virulent as to have necessarily and inevitably produced the result regardless of all other circumstances and conditions. The active efficient cause that sets in motion a train of events which bring about a result without the intervention of any force from a new and independent source may be regarded as the direct and proximate cause.

*Id.* at 569 (emphasis added). Under this view, it is still reasonable to conclude that Captain Eck's "accidental bodily injury" did not occur "directly and independently of all other causes." It is not frivolous to determine that Captain Eck's acute chordal rupture during the firefighting was not the "predominating factor" in his death, given that his preexisting condition made him vulnerable to the rupture.

18

b. *WFRA's arguments*

WFRA's arguments that KCL denied coverage in bad faith based on Captain Eck's preexisting condition are unavailing.

i.  KCL knowingly included false statements in its denial letters

WFRA asserts that the magistrate judge's order rejecting its attorney fees motion "contravenes Kansas law" because the order credited "facts that . . . [KCL] knew to be untrue at the time of the denial."  Aplt. Br. at 26.  It alleges that the magistrate judge could not find "just cause or excuse" based on KCL's statements in its denial letters because, according to WFRA, KCL knew its statements were false.  WFRA argues the committee understood, based on Dr. Lee's written opinion, that an acute event—Captain Eck's physical reaction while firefighting—caused Captain Eck's death, not the preexisting condition.

This argument fails because the test is not what the committee may have understood but what a reasonably prudent person in the insurer's position could have decided based on the medical evidence presented to KCL.  Moreover, assuming an acute event (the chordal rupture) caused Captain Eck's death, it would still be reasonable to conclude that the preexisting condition was also a contributing cause.

ii.  The KCL committee's investigation was deficient

WFRA contends that KCL used substandard methods to evaluate the claim, including lack of formal guidance or expertise, and that these deficiencies (1) cannot satisfy the "good faith" investigation requirement articulated in *Foster v. Stonebridge Life*

19

*Insurance. Co.*, 327 P.3d 1014 (Kan. Ct. App. 2012), *see* Aplt. Br. at 40-41; and (2) ran afoul of Kansas public policy, *id.* at 47-49.

The KCL committee's alleged mistakes do not warrant attorney fees for WFRA. "An imperfect investigation, standing alone, is not sufficient cause for recovery [of attorney fees] where the insurer, in fact, has an objectively reasonable basis to deny coverage." *Wiles*, 350 P.3d at 1082. Here, as previously discussed, there was at least one reasonable ground for denial.

WFRA's public policy argument also lacks merit. It cites sections of the Kansas Firefighters Relief Act and Kansas Administrative Regulations. *See* K.S.A. § 40-1707(a); K.A.R. § 40-10-5. Neither addresses an insurer's investigation of a claim. WFRA also cites the Kansas Uniform Trade Practices Act ("KUTPA"), which states that "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" is an "unfair method of competition and unfair deceptive act or practice." K.S.A. § 40-2404(9)(c). The magistrate judge found that "there was no violation of those standards which was logically and [causally] related to a bad faith denial of the claim or which is relevant to the bad faith issue in this particular case." *Wichita Firemen's Relief Ass'n*, 237 F. Supp. 3d at 1143. We agree. WFRA does not adequately brief an argument to hold otherwise, *see* Aplt. Br. at 48-49, particularly in view of our foregoing conclusion that KCL had a reasonable, good-faith basis to deny the AD&D claim.[7]

---

[7] WFRA also argues the magistrate judge's rejection of its attorney fees motion "contravenes Kansas law" because it "credit[s] a legal argument not raised at the time the

\* \* \* \*

The magistrate judge did not abuse his discretion when he denied WFRA's motion for attorney fees.

## B. *Costs*

The magistrate judge did not abuse his discretion when he awarded costs to KCL under Federal Rule of Civil Procedure 68. WFRA contends that costs should have been denied because KCL's Rule 68 settlement offer was either ambiguous or a sham. We disagree because KCL sufficiently clarified its offer and the offer was not a sham.

### 1. **Standard of Review**

"We review an award of costs [under Rule 68(d)] for an abuse of discretion." *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1178 (10th Cir. 2011), *aff'd*, 568 U.S. 371 (2013).

### 2. **Federal Rule of Civil Procedure 68**

Federal Rule of Civil Procedure 68 states in relevant part:

> (a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued . . . .

> (b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except

---

claim was denied." *See* Aplt. Br. at 26. WFRA contends that KCL did not argue that there was no "accident" until litigation ensued, so KCL cannot use the "no-accident" ground as a good faith reason for its denial of Captain Eck's AD&D claim. *See* Aplt. Reply Br. at 7-8. Because we affirm on the different ground of the preexisting condition constituting a contributing cause, we need not address this argument.

> in a proceeding to determine costs . . . .

> (d) Paying Costs After an Unaccepted Offer. If the judgment
> that the offeree finally obtains is not more favorable than
> the unaccepted offer, the offeree must pay the costs
> incurred after the offer was made.

### a. *Ambiguous offers*

Rule 68 does not apply when an offer is ambiguous. *Arkla Energy Res. v. Roye Realty & Developing, Inc.*, 9 F.3d 855, 867 (10th Cir. 1993) ("Roye cannot invoke Rule 68 with an ambiguous offer."). "[An] offeree must know what is being offered in order to be responsible for refusing the offer." *Id.* Sufficient clarification of an ambiguous offer, however, can make the offer valid. *See Radecki v. Amoco Oil Co.,* 858 F.2d 397, 403 (8th Cir. 1988) (stating that an offeror may clarify an ambiguous Rule 68 offer); *Garayalde-Rijos v. Municipality of Carolina*, 799 F.3d 45, 48 n.3 (1st Cir. 2015) (citing *Radecki* for the proposition that "an offeror may in some circumstances clarify a [Rule 68] offer after making it.").

### b. *Sham offers*

Courts rarely have addressed whether there was a "sham offer" in the context of Rule 68 litigation. WFRA cites one case related to sham offers, *Delta Air Lines v. August*, 450 U.S. 346 (1981) (cited in Aplt. Br. at 55). But the Supreme Court in that case mentions "sham offers" only to describe the Seventh Circuit holding below, and then decided the case on a different ground. *Id.* at 355. The Seventh Circuit had held that a defendant's settlement offer of $500 was too low "to [have] justif[ied] serious consideration by the plaintiff" and that only reasonable offers should count for Rule 68

22

purposes. *August v. Delta Air Lines, Inc.*, 600 F.2d 699, 701 (7th Cir. 1979). The court said "a minimal Rule 68 offer made in bad faith could become a routine practice by defendants seeking cheap insurance against costs" and "damage[]" the "useful vitality" of the Rule. *Id.* The Supreme Court did not adopt the Seventh Circuit's reading of a reasonableness requirement into Rule 68 to avoid sham offers in litigation. Instead, it said: "it is clear that [Rule 68] applies only to offers made by the defendant and only to judgments obtained by the plaintiff." *Delta Air Lines, Inc.*, 450 U.S. at 352. *Delta* does not affect cases like the one here in which the plaintiff prevailed.[8]

### 3. **Analysis**

The magistrate judge did not abuse his discretion in awarding post-settlement-offer costs to KCL. KCL's Rule 68 offer was not ambiguous or a sham. WFRA does not

---

[8] *See also S.G.C. v. Penn-Charlotte Assocs.*, 116 F.R.D. 284, 287 (W.D.N.C. 1987) (in a case where plaintiff prevailed, defendant's previous Rule 68 offer had not been a "sham offer" because it was "made in good faith in an attempt to dispose of the case on a reasonable basis" and plaintiff "had an inflated, arbitrary and completely unrealistic view as to the value of the case"); *Chesny v. Marek*, 547 F. Supp. 542, 545-46 (N.D. Ill. 1982), *rev'd on other grounds in* 720 F.2d 474 (7th Cir. 1983), *rev'd on other grounds in* 473 U.S. 1, 105 (1985) (citing Supreme Court's *Delta* decision to call into doubt a Rule 68 "sham offer" argument: "[a sham offer argument] is dubious at best in light of the Supreme Court's treatment of the issue. If a plaintiff wins at trial, but is awarded a judgment for less than the earlier Rule 68 offer, it is really a contradiction in terms to label that offer a sham"); *Tompkins v. Rex*, No. 92 C 0910, 1993 WL 553709, at *1 (N.D. Ill. Dec. 28, 1993) (unpublished) (citing the Supreme Court's *Delta* holding for the proposition that Rule 68 as written already guards against "sham offer[s]").

otherwise contest on appeal the district court's application of Rule 68(d) to award costs to KCL.[9]

a. *The offer was not ambiguous*

In response to WFRA's motion to clarify the offer, KCL did so to the magistrate judge's satisfaction and cured any ambiguity to make its offer valid under Rule 68.

WFRA mistakenly argues that an offer may never be clarified. *See, e.g., Radecki,* 858 F.2d at 403. Indeed, *Arkla* itself suggests otherwise. In *Arkla*, the offer was invalid under Rule 68 because the offeror did not satisfy a clarification request. 9 F.3d at 867. Here, KCL clarified its offer.

WFRA also contends that the clarified offer remained ambiguous, due to the "internal inconsistency" as to whether attorney fees were included in KCL's offer. Aplt. Br. at 53. The magistrate judge did not err, however, when he found no inconsistency after KCL's clarification: "[KCL] explains that its offer 'pays a specified sum for [WFRA's] claim for breach of contract and request for attorney's fees [paragraph 1] and then pays all of WFRA's non-attorney's fees [paragraph 3] . . . .' This, in the Court's opinion, adequately explains any ambiguity in the offer that may have existed." App. at 241. We agree there was no internal conflict or ambiguity in light of KCL's explanation.

b. *The offer was not a sham*

WFRA argues that KCL's offer was a sham because it

---

[9] In particular, WFRA does not contest that the judgment it obtained was "not more favorable than the unaccepted offer." Fed. R. Civ. P. 68(d). We therefore do not address that issue.

24

> did nothing more than hedge against its downside risks. [KCL] knew that its offer would not—and could not—be accepted because, at the time it was made the legal fees incurred by [WFRA] were nearly twice as much as the offer. [KCL], therefore, risked nothing in order to claim the avoidance of its costs should the jury—as it did—render a verdict in the [WFRA's] favor.

Aplt. Br. at 54.

WFRA misunderstands the risk calculus involved in a prejudgment offer. KCL did not "risk[] nothing" by making its offer. *Id.* Indeed, it risked the prospect of having its $101,000 settlement offer accepted when a jury might eventually have found in its favor (meaning KCL would owe nothing to WFRA). Having put its money at risk, KCL is entitled to the protection of the rule. That the jury ended up awarding WFRA $100,000 has no bearing on whether KCL's prejudgment offer was a sham. WFRA's argument on this ground fails.

## III. **CONCLUSION**

For the foregoing reasons, we affirm the magistrate judge's orders on attorney fees and costs.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

25